# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00678-CV

---

**Appellants, Ardelia Austin and Allayne Austin // Cross-Appellant, Betty Simmons Austin**

**v.**

**Appellee, Betty Simmons Austin // Cross-Appellees, Ardelia Austin and Allayne Austin**

---

**FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
NO. C-1-PB-17-000281, THE HONORABLE GUY S. HERMAN, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This is a dispute over two competing wills disposing of the estate of Morris Austin, Jr. The parties are his children Ardelia Austin and Allayne Austin (the Daughters) and his widow, Betty Simons Austin.[1] The trial court admitted to probate a will leaving Morris' entire estate to Betty and allowed both sides to recover their attorney's fees and other expenses out of the estate. We affirm.

## BACKGROUND

Morris died in January of 2017 at the age of eighty-five. Shortly afterwards, the Daughters applied to probate a will dated April 6, 2016 (April Will), appointing them both independent co-executors. The Daughters are the principal beneficiaries under the April Will.

---

[1] We refer to the parties by their first names because they share a common surname. Betty is not the mother of Ardelia and Allayne.

The trial court issued an order admitting the April Will to probate and appointing the Daughters independent co-executors. Nine days later, Betty filed a cross-application to probate a will dated December 16, 2016 (December Will) making her sole beneficiary of Morris' estate. The December Will bears the signature "Morris Austin Jr." and those of three witnesses: Sharon Bouldwin, Alexis Balancier, and Steven Henry. The Daughters filed an answer asserting the December Will is invalid because Morris' signature is a forgery. After hearing testimony and evidence on whether Morris' signature was genuine, the trial court signed an order admitting the December Will to probate and appointing Betty as independent executor in place of the Daughters. The parties subsequently filed separate motions for an allowance of reasonable attorney's fees out of the estate. *See* Tex. Est. Code § 352.052 ("Allowance for Defense of Will"). The trial court granted both motions and modified its previous order to award the Daughters $33,173 and Betty $48,340.15 in fees and litigation expenses.[2] At the parties' request, the trial court filed findings of fact and conclusions of law.

The Daughters appeal the trial court's admission of the December Will to probate and award of attorney's fees to Betty. Betty cross-appeals the award of attorney's fees to the Daughters.

## DAUGHTERS' APPEAL

The Daughters argue there is legally insufficient evidence supporting the trial court's finding that Morris personally signed the December Will. If we agree, they contend, we must reverse the court's allowance of attorney's fees to Betty. The Daughters argue in their

---

[2] The trial court's order grants the parties' fee applications but then awards the amounts directly to their lawyers. Neither side raises this issue but instead treats the order as awarding fees directly to the parties. We will do the same for purposes of this appeal.

remaining issues that the trial court erred by admitting two exhibits—an excerpt from Morris'
medical records and an audio recording—over their hearsay objections.

**Probate of December Will**

After a will has been admitted to probate, a person may file an application to
admit a later will by the same decedent. *Id.* § 256.102. An application under this provision is
not considered a contest of the validity of the earlier will. *In re Estate of Hormuth*,
No. 04-14-00105-CV, 2014 WL 4438491, at *2 (Tex. App.—San Antonio Sept. 10, 2014, no
pet.) (mem. op.) (citing *Stovall v. Mohler*, 100 S.W.3d 424, 427 (Tex. App.—San Antonio 2002,
pet. denied)). Instead, the court considers the second application under the same standards and
criteria as the first and may admit the second will to probate. *See* Tex. Est. Code §§ 256.102,
.103(a). An order admitting a second, later will to probate "effectively revokes the probate of the
first will." *In re Estate of Hormuth*, 2014 WL 4438491, at *2.

In a proceeding to admit a will to probate, the proponent carries the initial burden
of proof. *In re Estate of Danford*, 550 S.W.3d 275, 281 (Tex. App.—Houston [14th Dist.] 2018,
no pet.). Because the December Will was not self-proved, meeting this burden required Betty to
show, as relevant here, that Morris "executed the will with the formalities and solemnities
and under the circumstances required by law to make the will valid." Tex. Est. Code
§ 256.152(a)(2). A will is valid if it is "signed by the testator in person" and "attested by two or
more credible witnesses who are at least 14 years of age and who subscribe their names to the
will in their own handwriting in the testator's presence." *Id.* § 251.051(2)(A), (3). The trial

3

court expressly found that Morris personally signed the December Will.[3] The Daughters challenge the legal sufficiency of that finding.

In an appeal from a bench trial, we review the sufficiency of the evidence supporting the trial court's fact findings using the same standards that we apply to jury findings. *Texas Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019). We will sustain a legal sufficiency challenge when the record contains no evidence of a vital fact, rules of law or evidence bar us from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a mere scintilla, or the evidence conclusively establishes the opposite of the vital fact. *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 736 (Tex. 2018). In reviewing the record, we "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable [factfinders] could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). It is the role of the factfinder to resolve conflicts in the evidence, but it must do so reasonably. *See id.* at 820, 827.

We first set out the conflicting evidence regarding whether Morris personally signed the December Will. Sharon Bouldwin, one of the subscribing witnesses, affirmatively testified that Morris signed the December Will in the presence of the three witnesses, who then signed their own names on the will. Hazel Scott, a notary public, confirmed Bouldwin's testimony and described the events preceding the signing. She was at Morris' house on December 16 to notarize a document for him when he asked her to find witnesses for a will he intended to sign. She agreed and returned with Bouldwin, Henry, and Balancier. Scott watched Morris and the witnesses sign the will, and then affixed her notary's seal while Morris signed her

---

[3] Another person can execute a will on behalf of the testator by signing the will in the testator's presence and under his direction. Tex. Est. Code § 251.051(2)(B). Betty has never suggested that occurred here.

4

notary book. On the other hand, Dale Stobaugh, a forensic document examiner, testified as an expert that Morris' purported signatures are not genuine. Stobaugh testified that he compared Morris' purported signature on the December Will, the corresponding entry from Hazel Scott's notary book, and a statutory power of attorney with sixty-seven known examples of Morris' handwriting and eight samples of Betty's. He concluded there is a "strong probability" Morris did not make any of the signatures because of "a number of differences" with the handwriting exemplars. Stobaugh further concluded that there are "indications that Betty Austin may have written Morris Austin's signatures" on the December Will and the corresponding notary book entry. In addition, the Daughters testified they were familiar with Morris' handwriting and that the signature on the December Will is not genuine. *See* Tex. R. Evid. 901(b)(2) (providing that non-expert can offer opinion testimony on genuineness of handwriting "based on a familiarity with it that was not acquired for the current litigation"). The Daughters explained they were familiar with Morris' signature because they helped him manage his finances, and he usually paid bills by check. Both testified that the "M" in "Morris" on the will is noticeably different from Morris' usual signature. Allayne in particular stressed that "[e]ven when his signature was deteriorating, [the M] still had the same form." Moreover, the signature on the December Will is "Morris Austin Jr.," but both testified Morris never included "Jr." in his signature.

The Daughters argue the trial court could not reasonably resolve the conflict in the evidence by concluding Morris' signature on the December Will is genuine. They seize on Betty's admission at trial that she withdrew $35,000 from Morris' bank account after he died and signed his name on a title transfer document conveying Morris' car to her son. They contend her willingness to sign Morris' name on documents following his death to gain control of his property makes it likely she forged Morris' name on the December Will. A valid will requires

5

witnesses to its execution, so the Daughters allege she recruited Scott, her longtime acquaintance, to find witnesses to attest falsely to the signature. As evidence, they point to discrepancies between the testimony of Bouldwin and Scott. For example, Bouldwin testified that Balancier arrived at Morris' house separately and did not come in Scott's car, but Scott testified she drove all of the witnesses there together. Scott and Bouldwin also disagreed on whether the signing took place in the afternoon or in the evening, or whether Betty handed Scott money when they arrived. However, Scott and Bouldwin consistently testified that Morris signed the December Will in the presence of the three subscribing witnesses. The trial court could have reasonably attributed the inconsistencies in their testimony to their imperfect recollections of the signing, which took place over a year before trial. On this record, it was not unreasonable for the trial court to accept Bouldwin and Scott's testimony and disregard the Daughters' evidence.[4] We conclude there is legally sufficient evidence that Morris personally signed the December Will.

**Admission of Evidence**

Having rejected the Daughters' legal sufficiency challenge, we turn to whether the trial court erred by admitting Morris' medical records from Austin Hospice and an audio recording created by Betty. We review a trial court's admission or exclusion of evidence for an

---

[4] The Daughters argue that Bouldwin and Scott's testimony that Morris personally signed the December Will "is an impossibility" based on Stobaugh's testimony that the confirmed examples of Morris' handwriting exhibit "loss of control of the writing instrument itself." But the trial court was not required to accept Stobaugh's testimony. "Even uncontroverted expert testimony does not bind [the factfinder] unless the subject matter is one for experts alone." *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005). Authentication of handwriting is not a matter for experts alone but can be accomplished through testimony of a non-expert witness who is familiar with the handwriting. *See* Tex. R. Evid. 901(b)(2); *In re Estate of Watson*, 720 S.W.2d 806, 808 (Tex. 1986).

6

abuse of discretion. *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016). A court abuses its discretion when it acts without regard for guiding rules or principles. *Id.*

The Daughters argued that both exhibits contained hearsay within hearsay. Hearsay is an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." Tex. R. Evid. 801(d). Hearsay is inadmissible except as provided by statute or rule. *Id.* R. 802. Evidence containing multiple hearsay statements is admissible only if "each part of the combined statements conforms with an exception to the rule." *Id.* R. 805. The proponent of the hearsay evidence bears the burden to establish it falls within an exception. *Volkswagen of Am. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004).

The medical records at issue here consist of a four-page excerpt from Morris' patient chart from Hospice Austin. These particular records contain notes from various hospice staff documenting Morris' physical and mental condition. At trial, Betty's counsel asked her to read aloud from notes by Keri Kinsey, a social worker, documenting a meeting on December 16, 2016, between Morris, Betty, Keri, and other hospice employees. The trial court allowed her to read Kinsey's notes, which contain the following relevant passage: "[Morris] and [Betty] discussed [the] situation with [Morris'] children removing money from [Morris'] banking account. [Morris] was very upset by this and from what both described bank personnel have been unwilling to do what [Morris] and his spouse have asked regarding his account."[5] The Daughters insist that Morris and Betty's statements and Keri's notes are all hearsay because they were made out of court. *See id.* R. 801(d).

---

[5] The record reflects Morris had seven children, but it is undisputed that he was referring here to the Daughters.

7

However, "[o]ut-of-court statements are not hearsay if offered for a purpose other than to prove the truth of the matter asserted." *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992). Betty did not offer Morris' statements to prove the truth of the matter asserted in the statements—that the Daughters had withdrawn funds from Morris' bank account—but to provide an explanation for why Morris would want to execute a new will leaving nothing to his children. Because Betty offered the statements she and Morris made at that meeting for a purpose other than proving the truth of the matter asserted in the statements, they are not hearsay. *See id.*; *PNP Petroleum I, LP v. Taylor*, 438 S.W.3d 723, 735 (Tex. App.—San Antonio 2014, pet. denied) ("An out of court statement, offered to show what was said, rather than the truth of what was said, is not hearsay." (quoting *Ho Wah Genting Kintron Sdn Bhd v. Leviton Mfg. Co.*, 163 S.W.3d 120, 126 (Tex. App.—San Antonio 2005, no pet.))).

Regarding Keri's notes, Betty argued that they were admissible under the business-record exception to the hearsay rule.[6] Under that exception, evidence that is otherwise inadmissible hearsay may be admissible if the proponent demonstrates that: (1) the record was made and kept in the course of a regularly conducted business activity; (2) it was the regular practice of the business activity to create such a record; (3) the record was created at or near the time of the event recorded; and (4) the record was created by, or from information transmitted by, a person with knowledge who was acting in the regular course of business. Tex. R. Evid. 803(6). These prerequisites to admissibility may be supplied by an affidavit or unsworn declaration that complies with Rule 902(10). *Id.* R. 803(6)(D). Betty produced a sworn affidavit

---

[6] The Daughters do not expressly address the business records exception in their briefing. In the interests of justice, we treat the exception as fairly included in their issue challenging the trial court's admission of the hospice records. *See Anderson v. Durant*, 550 S.W.3d 605, 617 (Tex. 2018) (instructing courts to "treat an appellant's statement of an issue or point as covering every subsidiary question that is fairly included.").

from Lauren Wagner, custodian of records for Hospice Austin. Wagner's affidavit fully complies with Rule 902(10) and so is sufficient to authenticate the hospice records as business records. *See* Tex. R. Evid. 803(6).

Evidence authenticated as a business record may be inadmissible nonetheless if the "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." *Id.* R. 803(6)(E); *Harpst v. Fleming*, 566 S.W.3d 898, 910 (Tex. App.—Houston [14th Dist.] 2018, no pet.). The Daughters do not challenge the trustworthiness of the source of information or preparation of the records. We conclude the district court did not abuse its discretion by admitting the medical records.

The Daughters also objected that the audio recording created by Betty contained multiple hearsay statements.[7] Betty recorded a meeting that took place on November 17, 2016, among herself, Morris, Dr. Frellsen, and other hospice staff. During Dr. Frellsen's testimony, Betty's counsel asked to play a four-minute selection from the recording in which Betty asks Dr. Frellsen and others if Morris was mentally sound when he married her earlier that month. Dr. Frellsen responded that he retained the "ability to make decisions [for] yourself." The trial court overruled the Daughters' hearsay objection and allowed counsel to play the recording. Betty arguably wanted to use the recording to prove the truth of the matter asserted in the statements—that Morris was mentally sound at the time—but even if the recording was inadmissible hearsay we cannot conclude admission of it was harmful.

Error in the admission of evidence is reversible only if it probably resulted in the rendition of an improper judgment. *U-Haul Int'l., Inc. v. Waldrip*, 380 S.W.3d 118, 136 (Tex.

---

[7] The Daughters further objected that the recording was made "in anticipation of litigation" and so is not trustworthy. We do not address this objection because we conclude any error in admitting the recording was harmless.

9

2012) (citing Tex. R. App. P. 44.1(a)). In determining whether that occurred, we "review the entire record, and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted." *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 29 (Tex. 2014) (quoting *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004)). The Daughters argue that admitting the recording prejudiced them, but they do not explain how it affected the trial court's ultimate decision. Moreover, the Daughters' counsel stated at trial that they were "not challenging mental capacity," and they do not raise a capacity issue on appeal. Because we are unable to conclude the judgment turned on admission of the recording, we conclude the trial court's error, if any, was harmless.

We overrule the Daughters' issues on appeal.

## BETTY'S CROSS-APPEAL

In her cross-appeal, Betty argues the trial court erred by awarding the Daughters their attorney's fees and expenses out of Morris' estate.

Whether attorney's fees are available under a particular statute is a question of statutory construction, an issue of law we review de novo. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). We interpret a statute according to the plain meaning of its text "unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018). When analyzing a specific provision, "we consider the context and framework of the entire statute and meld its words into a cohesive reflection of legislative intent." *Id.* at 839 (quoting *Cadena Comercial USA Corp. v. Texas Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 326 (Tex. 2017)).

Section 352.052 of the Estates Code provides:

(a) A person designated as executor in a will or an alleged will, or as administrator with the will or alleged will annexed, who, for the purpose of having the will or alleged will admitted to probate, defends the will or alleged will or prosecutes any proceeding in good faith and with just cause, whether or not successful, shall be allowed out of the estate the executor's or administrator's necessary expenses and disbursements in those proceedings, including reasonable attorney's fees.

(b) A person designated as a devisee in or beneficiary of a will or an alleged will who, for the purpose of having the will or alleged will admitted to probate, defends the will or alleged will or prosecutes any proceeding in good faith and with just cause, whether or not successful, may be allowed out of the estate the person's necessary expenses and disbursements in those proceedings, including reasonable attorney's fees.

Tex. Est. Code § 352.052(a)-(b).

Betty argues the fees incurred by the Daughters opposing her cross-application are not recoverable under Section 352.052 because the April Will had already been admitted to probate. She construes the statutory phrase "for the purpose of having the will or alleged will admitted to probate" as limiting recovery to fees incurred before the trial court admits a will to probate. But the Legislature has clearly contemplated that an interested person may contest the validity of a will that has already been admitted to probate. *See, e.g.*, *id.* § 256.204(a) ("After a will is admitted to probate, an interested person may commence a suit to contest the validity thereof not later than the second anniversary of the date the will was admitted to probate[.]"). When read as a whole, nothing in the text of Section 352.052 indicates the Legislature intended to exclude persons who defend a will after its admission to probate. This construction is consistent with other courts' interpretation of Section 352.052's predecessor statute, former Section 243 of the Probate Code. *See* Act of May 23, 1987, 70th Leg., ch. 462, § 1,

11

1987 Tex. Gen. Laws 2048, 2048–49, *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, §§ 1, 10–12, 2009 Tex. Gen. Laws 1512, 1650, 1731–32 (current version at Tex. Est. Code § 352.052). The Texas Supreme Court interpreted former Section 243 to allow recovery of fees and expenses incurred by a person who "employs attorneys to defend the will or prosecute an action to probate the same." *Salmon v. Salmon*, 395 S.W.2d 29, 31 (Tex. 1965); *see Russell v. Moeling*, 526 S.W.2d 533, 535 (Tex. 1975) (applying former Section 243 to case involving will contest filed after will admitted to probate). Following these decisions, the courts of appeals have consistently recognized attorney's fees are available for post-probate defense of a will. *See In re Estate of Wilcox*, 193 S.W.3d 701, 704 (Tex. App.—Beaumont 2006, no pet.); *Zapalac v. Cain*, 39 S.W.3d 414, 418–19 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *Travis v. Robertson*, 597 S.W.2d 496, 498 (Tex. App.—Dallas 1980, no writ). The text of Section 352.052 calls for the same result.

In the alternative, Betty argues the Daughters cannot recover fees because they were not defending the April Will. Betty reasons that because she did not allege in her application that the April Will was invalid, the Daughters were effectively will contestants and so cannot recover attorney's fees. *See Zapalac*, 39 S.W.3d at 419 (explaining that "a party who seeks only to contest a will may not obtain statutory reimbursement for attorney's fees"). Betty is correct to the extent that a timely application to probate a later will on the sole ground it was executed later "is neither a contest of the validity nor barred by the probate of an earlier will." *See In re Estate of Morris*, 577 S.W.2d 748, 752 (Tex. App.—Amarillo 1979, writ ref'd n.r.e.). But that does not mean the Daughters' attacks on the December Will were not in defense of the April Will. Because an order probating a later will revokes probate of an earlier will, by challenging the validity of the December Will the Daughters were effectively defending the

12

April Will's admission to probate. *See Zapalac*, 39 S.W.3d at 419 ("In a contest between two or more wills, defending or prosecuting a will frequently involves an attack on the other will(s)."). We conclude the Daughters were defending the April Will and so are eligible to recover fees under Section 352.052.

We overrule Betty's cross-issue.

## CONCLUSION

We affirm the trial court's order admitting the December Will to probate and allowing both sides to recover their attorney's fees and expenses out of the estate.

_____

Edward Smith, Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed

Filed:   September 12, 2019