MOTOR COMPONENTS, LLC
and Bam Enterprises,
Inc., Appellant,

v.

DEVON ENERGY CORPORATION,
Appellee.

No. 14–10–00402–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 7, 2011.

David Edwards Wynne, Kenneth R. Wynne, Houston, for appellant.

C. Carrick Brooke–Davidson, Austin, Dan Isenhower, Houston, William R. Jones, Dallas, for appellee.

Panel consists of Justices SEYMORE, BOYCE, and CHRISTOPHER.

## OPINION

TRACY CHRISTOPHER, Justice.

In this interlocutory appeal, Motor Components, LLC and BAM Enterprises, Inc. challenge the denial of their special appearances in a Texas declaratory-judgment action. Because the companies have insufficient contacts with Texas to sustain the trial court's exercise of personal jurisdiction, we reverse the trial court's ruling and remand the case to the trial court for the dismissal and severance of the claims against them.

### I. Background

In 1992, Pennzoil Company, a Delaware corporation located in Texas, entered into an Environmental Indemnification Agreement with its subsidiary, Purolator Products Company ("Purolator"), a Delaware corporation located in Oklahoma. Pennzoil agreed to indemnify Purolator for certain costs of remediating Purolator's real property in New York ("the Elmira Facility") and Michigan ("the Metamora Landfill"). Mark IV Industries, Inc. acquired Purolator in 1994, and parceled it into separate divisions in 1997. Two years later, Mark IV sold one of Purolator's divisions to Arvin Industries, Inc., and sold Purolator itself to CLARCOR, Inc. Also in 1999, Mark IV created a subsidiary, Motor Components, LLC, a Delaware corporation with its principal place of business in New York. Through one or more transactions that are not described in the record, Motor Components became the owner of the Elmira Facility and succeeded to Purolator's rights under the Environmental Indemnification Agreement. Motor Components was sold in 2002 to BAM Enterprises, Inc. ("BAM"), a New York corporation with its principal place of business in New York.

In March 2009, Motor Components asked Pennzoil's successor-in-interest, Devon Energy Company, for authorization to incur certain expenses to determine if further remediation of the Elmira Facility was necessary. Although Devon is a Delaware corporation with its principal place of business in Oklahoma, Devon's in-house counsel is located in Houston; Motor Components's New York counsel therefore sent the correspondence to Devon's attorney in Texas. A second letter followed on August 12, 2009 and a third on December 10, 2009. The parties disagreed regarding the costs that were to be indemnified, and on December 16, 2009, Devon filed a declaratory-judgment action asking a Harris County district court to construe the Environmental Indemnification Agreement. The defendants included not only Motor Components, but also BAM, Mark IV, CLARCOR, and Purolator, among others. Motor Components and BAM filed a joint special appearance, which the trial court denied, and this interlocutory appeal ensued.

## II. Issues Presented

In five issues, Motor Components and BAM challenge the denial of their special appearances. In their first issue, they contend there is no basis for exercising personal jurisdiction over BAM, and in their second, they argue they have established that neither Motor Components nor BAM conducts business in Texas. In their third issue, they challenge the adequacy of Devon's jurisdictional allegations. They assert in their fourth issue that personal jurisdiction cannot be sustained on the basis that Motor Components's products can be purchased from third parties via the internet, because the products cannot be purchased from Motor Components's website, and in any event, its products have no connection to this lawsuit. In their fifth issue, they contend that letters from Motor Components's New York counsel to Devon's in-house counsel cannot support the exercise of personal jurisdiction.

## III. Standard of Review

We review de novo a trial court's denial of a nonresident defendant's special appearance. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). When the trial court issues no findings of fact and conclusions of law, we imply all factual findings supported by the evidence that are necessary to support the trial court's ruling. *Id.*

## IV. Analysis

A Texas trial court may exercise personal jurisdiction over a nonresident defendant when authorized by the Texas long-arm statute unless doing so would violate federal and state constitutional due process guarantees. *Id.* These guarantees are not violated, however, if the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* "A defendant establishes minimum contacts with a state when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex.2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

The "purposeful availment" inquiry has three parts. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). First, only the defendant's contacts with the forum are relevant. *Id.* Second, the contacts on which jurisdiction depends must be purposeful, rather than random, fortuitous, or attenuated. *Id.* Third, "the

**202**

'defendant must seek some benefit, advantage or profit by "availing" itself of the jurisdiction.'" *Id.* (quoting *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 785 (Tex.2005)).

A nonresident's contacts can give rise to specific or general jurisdiction. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002) (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Specific jurisdiction arises when (1) the defendant purposefully avails itself of the privilege of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities. *Retamco,* 278 S.W.3d at 338 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). When analyzing specific jurisdiction, we focus on the relationship among the defendant, the forum, and the operative facts of the litigation. *Moki Mac,* 221 S.W.3d at 575.

Unlike specific jurisdiction, general jurisdiction is "dispute-blind." *PHC–Minden, L.P. v. Kimberly–Clark Corp.,* 235 S.W.3d 163, 168 (Tex.2007). It may be asserted over any claim, even when there is no connection between the cause of action and the forum state. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 228 (Tex. 1991). General jurisdiction may be exercised only if the nonresident defendant has had continuous and systematic contacts with the forum state over a reasonable number of years before suit was filed. *PHC–Minden,* 235 S.W.3d at 168–71. Thus, our general-jurisdiction inquiry requires a more demanding minimum-contacts analysis with a substantially higher threshold than that required for specific jurisdiction. *Id.* at 168.

## A. General Jurisdiction

As the basis for general jurisdiction, Devon alleged that Motor Components "has purposefully availed itself of the privileges and benefits of conducting business in Texas by distributing its products through retailers such as NAPA, CarQuest, Pep Boys, O'Reilly Auto Parts, and wholesaler AfterMark, LLC (a Texas company located in Richardson, Texas)." Devon further alleged that BAM is Motor Components's successor-in-interest and "engages in business in Texas through Motor Components."

For both legal and evidentiary reasons, jurisdiction cannot be sustained on this basis. First, "stream-of-commerce analysis 'is relevant only to the exercise of specific jurisdiction; it provides no basis for exercising general jurisdiction over a nonresident defendant.'" *Spir Star AG v. Kimich,* 310 S.W.3d 868, 874 (Tex.2010) (quoting *Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d 773, 788 (7th Cir.2003)). And although Devon produced some evidence that on February 19, 2010—more than two months after Devon filed suit—Motor Components's website contained links to the websites of third-party retail stores in Texas where its products could be purchased, such evidence is not relevant to the jurisdictional inquiry. *See PHC–Minden,* 235 S.W.3d at 169 (holding that when determining whether a nonresident defendant has continuous and systematic contacts with Texas sufficient to support general jurisdiction, courts examine the defendant's contacts and forum-related activities only up to the time that suit was filed). Second, BAM and Motor Components produced evidence disproving Devon's allegations. Specifically, they produced uncontroverted affidavit testimony that neither company has any presence in Texas; conducts any business activity in Texas; sells any products in Texas; owns

property in Texas; employs anyone in Texas; advertises in Texas; maintains an office, mailing address, telephone number, or bank account in Texas; or holds director or shareholder meetings in Texas. In addition, an executive officer of both companies attested that Motor Components sells its products only in New York, and BAM does not make or sell any products at all. We therefore sustain Motor Components and BAM's first through fourth issues with regard to general jurisdiction.

## B. Specific Jurisdiction

### 1. Based on Allegations that Defendants are "Successors" to Purolator, a Company with Texas Contacts

 Although BAM, Motor Components, and Purolator are distinct entities, it appears to be Devon's position that, at least for the purpose of specific jurisdiction, a contract signatory's contacts with the forum are imputed as a matter of law to one who succeeds to and attempts to exercise the signatory's rights under the contract. Devon has not stated this explicitly, but its allegations, evidence, and argument, from its initial pleading through its post-submission brief, are founded on this assumption. For example, a plaintiff bears the initial burden to plead facts sufficient to bring a nonresident defendant within reach of the Texas long-arm statute,[1] but in its pleadings, Devon merely identified Purolator's various contacts with Texas and alleged that (1) Purolator was a signatory to the Environmental Indemnification Agreement, (2) Motor Components is Purolator's successor-in-interest, and (3) BAM is Motor Components's successor-in-interest. Motor Components agrees that it is the successor to Purolator's rights under the Environmental Indemnification Agreement. BAM offered uncontroverted evidence that it is not Motor Components's successor and is not a successor to either party to the Environmental Indemnity Agreement.

Devon then opposed BAM and Motor Components's special appearance with evidence in which the distinctions between these companies and Purolator were simply ignored. Lynn Travis, Devon's Environmental Coordinator, testified by affidavit that "Purolator"—which she defined as "Purolator Products Company and its successors"—routinely sent mail and email to her in Texas. Devon's in-house counsel similarly attested that "[f]or the past 18 years, Motor Components/BAM and its predecessors have benefitted from the Agreement...." And in a post-submission brief, Devon argued that it "pled that Motor Components was the successor to Purolator.... Appellants have never disputed that Motor Components is the successor to Purolator.... There is nothing in the Clerk's Record ... that demonstrates that Motor Components is not the successor to Purolator."

 But Motor Components's status as the successor to Purolator's interest in the Environmental Indemnification Agreement does not have the jurisdictional significance that Devon implies. Because Purolator, Motor Components, and BAM are separate corporations, we presume they are distinct entities. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 798 (Tex.2002). One corporation's jurisdictional contacts cannot be imputed to another simply by "blurring the distinction" between them. *See All Star Enters., Inc. v. Buchanan,* 298 S.W.3d 404, 422 (Tex.App.-Houston [14th Dist.] 2009, no pet.). We are aware of no support under Texas law—and Devon conceded at oral

---

1. *See Kelly,* 301 S.W.3d at 658.

argument that it could cite none—for the position that a corporation's jurisdictional contacts are imputed automatically to a nonresident that succeeds to the corporation's contract rights.

In a post-submission brief, however, Devon asserted that under *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640 (5th Cir.2002), "a successor corporation deemed to be a mere continuation of its predecessor is bound by the predecessor's submission to the jurisdiction of a court." The "continuation" theory is an exception to the traditional rule that a successor corporation does not assume the liabilities of a predecessor. *Id.* at 649. The question of whether one corporation is liable for another's actions is distinct from the question of whether one corporation's jurisdictional contacts may be imputed to another,[2] but in some jurisdictions, "[i]f a court has personal jurisdiction over the predecessor in interest, once successor liability is established, personal jurisdiction over the successor in interest necessarily exists." *Select Creations, Inc. v. Paliafito Am., Inc.*, 852 F.Supp. 740, 765 (E.D.Wis. 1994). Thus, Devon now asserts that the exercise of personal jurisdiction is appropriate in this case because "[t]he undisputed evidence before the trial judge was that Motor Components/BAM is a mere continuation of Purolator."

There are insurmountable problems with this argument. First, BAM denied it was a successor of any sort and therefore cannot be liable under a continuation theory. Devon did not present any evidence to controvert this.

Second, this is a declaratory-judgment action in which Devon seeks clarification of its own contractual obligations. It is not a suit in which Devon seeks to impose liability on BAM and Motor Components.

Third, Devon did not previously allege that either of these defendants was a mere continuation of Purolator, and BAM and Motor Components were required to negate only those bases for jurisdiction that were alleged in the trial court. *See Kelly*, 301 S.W.3d at 658. At least one court could be said to have treated the word "successor" as if it were synonymous with "mere continuation" or "the same entity." *See Purdue Research Found.*, 338 F.3d at 783–84. But this is not the way the term is used by most other courts—including the *Patin* court—when discussing whether contacts of one company can be imputed to another. *See Patin*, 294 F.3d at 654 ("[A] successor corporation *that is deemed to be a 'mere continuation' of its predecessor corporation* can be bound by the predecessor corporation's voluntary submission to the personal jurisdiction of a court.") (emphasis added); *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1131 (10th Cir.1991) ("A corporation's contacts with a forum may be imputed to its successor *if forum law would hold the successor liable for the actions of its predecessor.*") (emphasis added); *Dlorah, Inc. v. Nau Holdings, LLC*, No. CIV. 08–5091–RHB, 2009 WL 1107533, at *3 (D.S.D. Apr. 23, 2009) (declining to impute jurisdictional contacts based on conclusory allegations of successor liability); *Alves v. Players Edge, Inc.*, No. 05CV1654 WQH(CAB), 2007 WL 6004919, at *7 (S.D.Cal. Aug. 8, 2007) (no jurisdiction where plaintiff provided neither factual allegations nor evidence that successor-in-interest would be subject to successor liability). Moreover, Devon, Motor Components, and BAM also have not used the term "successor" in this suit to mean "mere continuation" or "the same entity." Although Devon alleged that Motor Components is Purolator's successor,

---

2. *See PHC–Minden*, 235 S.W.3d at 174–75.

and BAM is Motor Components's successor, all three companies still exist and each is a defendant in this suit.

Fourth, *Patin* was decided under Florida law. *See Patin*, 294 F.3d at 650. Devon has never argued that Florida law applies, and our law is different. The Texas legislature rejected long ago the "continuation" doctrine of implied successor liability on which this jurisdictional theory is based. *See* Act of May 4, 1979, 66th Leg., R.S., ch. 194, § 1, 1979 Tex. Gen. Laws. 422, 422–23 (amended 1987, 1991, 1993, & 1997; recodified 2003) (current version at TEX. BUS. ORGS.CODE ANN. § 10.254 (West 2009)); *Shapolsky v. Brewton*, 56 S.W.3d 120, 137–38 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (explaining that just as liability cannot be transferred under a "mere continuation" theory, one company's contacts cannot be imputed to its successor for purposes of establishing personal jurisdiction), *abrogated on other grounds by Michiana Easy Livin' Country*, 168 S.W.3d at 789–90 & n. 63 (Tex.2005); *Mudgett v. Paxson Machine Co.*, 709 S.W.2d 755, 758 (Tex.App.-Corpus Christi 1986, writ ref'd n.r.e.) ("Certainly if the de facto merger doctrine is contrary to the public policy of our state, so must be the mere continuation doctrine."); *see also McKee v. Am. Transfer & Storage*, 946 F.Supp. 485, 487 (N.D.Tex. 1996) ("The Texas Business & Corporations Act eliminates the doctrine of implied successor liability.") The earlier codification of the statute as article 5.10(B) of the Business Corporation Act eliminated the "continuation" theory of liability as to both domestic and foreign corporations. *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 139 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). The current version applies only to domestic entities. *See* TEX. BUS. ORGS.CODE ANN. § 10.254.

It is impossible to determine which version of the statute applies because Devon's factual allegations do not include the date on which Motor Components succeeded to Purolator's rights under the 1992 Environmental Indemnification Agreement. Devon does not argue that another state's law should govern the jurisdictional issue here and did not ask the trial court or this court to take judicial notice of any other state's laws; therefore, we will assume Texas law applies. *See Burlington N. & Santa Fe Ry. Co. v. Gunderson, Inc.*, 235 S.W.3d 287, 290–92 (Tex.App.-Fort Worth 2007, pet. withdrawn) (absent a motion to take judicial notice of another state's laws, courts may apply Texas law, and they are entitled to presume that, *"whichever* state's law applied, it is identical to Texas law") (emphasis added). And under Texas law, we do not automatically impute the predecessor's jurisdictional contacts to the successor. *Shapolsky*, 56 S.W.3d at 137–38.

Our record contains no document identifying the rights or liabilities Motor Components assumed under the 1992 Environmental Indemnification Agreement. We only know that it is Purolator's successor under the contract, and the contract itself does not contain an agreement to submit to jurisdiction in Texas. Thus the 1992 Environmental Indemnification Agreement does not support jurisdiction.

Because Purolator's contacts cannot be imputed to Motor Components, we sustain their first through fourth issues as they pertain to specific jurisdiction.

### 2. Based on Letters Between Counsel

█ In a surreply to the special appearance, Devon argued that the trial court could exercise specific jurisdiction over Motor Components and BAM because Motor Components's attorney wrote three letters to Devon's counsel about the Envi-

ronmental Indemnification Agreement.[3] This evidence cannot support a finding of jurisdiction because it demonstrates only Devon's unilateral choice to locate the offices of its in-house counsel in Texas. *See Burger King*, 471 U.S. at 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (explaining that jurisdiction cannot be based on the unilateral activity of a third party); *see also Johns Hopkins Univ. v. Nath*, 238 S.W.3d 492, 501 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (employment of ten Texas residents did not show purposeful availment because their residency was based on their own choice or a third party's requirements). Devon's receipt of the letters in Texas is merely fortuitous because Motor Components had no control over the location of Devon's counsel. *See Sussman v. Old Heidelburg, Inc.*, No. 14-06-00116-CV, 2006 WL 3072092, at *3 (Tex.App.-Houston [14th Dist.] Oct. 31, 2006, no pet.) (mem. op.) (demand letters sent to Texas from New York attorney who had no control over recipient's choice of location do not support specific jurisdiction).[4]

We sustain Motor Components's and BAM's fifth and final issue. Because we have determined that Motor Components and BAM did not have sufficient contacts with Texas to establish personal jurisdiction, we need not address their arguments that exercising jurisdiction over them offends traditional notions of fair play and substantial justice. *See Peredo v. M. Holland Co.*, 310 S.W.3d 468, 476 (Tex.App.-Houston [14th Dist.] 2010, no pet.).

### V. CONCLUSION

Although the trial court impliedly found that Motor Components and BAM had sufficient contacts to support the exercise of personal jurisdiction, the record does not support this finding. We therefore reverse the trial court's denial of their joint special appearance and remand the case with instructions to the trial court to dismiss with prejudice Devon's claims against Motor Components and BAM and to sever them from the remainder of the suit.

---

3. A fourth letter cannot be considered because it was sent after suit was filed. *See PHC-Minden*, 235 S.W.3d at 169.

4. The same is true of any correspondence between Motor Components or BAM and Devon's Environmental Coordinator, who also was located in Texas.