**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00017-CV**
_____

**SAMMI MACHINERY CO. LTD., Appellant**

**V.**

**JEDADIAH MATHEWS, CHELSEA MATHEWS, INDIVIDUALLY
AND AS NEXT FRIEND FOR G.M. AND J.M. JR. AND
ROBERT MARINES, APPELLEES**

**On Appeal from the 172nd District Court
Jefferson County, Texas
Trial Cause No. E-197,342**

**MEMORANDUM OPINION**

In this interlocutory appeal, Appellant Sammi Machinery Co. Ltd. (Appellant or Sammi Limited) appeals the trial court's order denying its special appearance. Because we find the trial court lacks specific personal jurisdiction over Sammi Limited, we reverse the trial court's ruling and remand the case to the trial court for the dismissal and severance of the claims against Sammi Limited.

1

## Background

Appellees Jedadiah Mathews, Chelsea Mathews, Individually and as Next Friend for G.M. and J.M. Jr., and Robert Marines (collectively "Appellees" or "plaintiffs") filed this lawsuit to recover damages and injuries that Jedadiah Mathews and Robert Marines sustained from a fire and explosion at the Chevron Phillips Chemical Company facility in Port Arthur, Texas. Plaintiffs' First Amended Petition named Sammi Machinery, Sammi Line Blind BeNeLux, PandID B.V., Sammi Machinery Co. Ltd., and Sunbelt Supply Co. as defendants.[1] The plaintiffs alleged that the fire and explosion were proximately caused by a defective sliding line blind valve (the valve), believed to have been installed in 2007. The plaintiffs alleged that the valve was designed and manufactured by the defendants.

Sammi Limited filed an answer and special appearance alleging that the trial court lacked personal jurisdiction over Sammi Limited and asserting a general denial. Sammi Limited argues that it is a South Korean business and not a Texas resident, it did not do business in Texas "at any relevant time[,]" it did not

---

[1] A default judgment was rendered against Sammi Machinery. Plaintiffs alleged that Sunbelt Supply Company is a Texas company doing business in Texas, and Sunbelt did not deny that the trial court had personal jurisdiction over Sunbelt. Sammi Machinery Co. Ltd. (Sammi Limited) is the only defendant that filed a special appearance and the only defendant that is before us in this interlocutory appeal. We address the other defendants only as necessary to explain the factual background and the parties' legal issues.

purposefully avail itself of the privilege of conducting activities in Texas, it does not have ongoing contacts with Texas required for general jurisdiction, and "specific jurisdiction does not lie where [p]laintiffs' injuries did not arise from any Texas contacts by Sammi Limited." Sammi Limited alleged it did not do business in Texas before November of 2011 and, therefore, it could not have designed, manufactured, or sold any sliding line blinds installed in 2007. Sammi Limited also alleged that it was not a wholly owned and operated subsidiary of Sammi Line Blind BeNeLux and PandID B.V.; it has not registered to do business in Texas; it has not had an address or telephone listing in Texas; it has not held board meetings in Texas or traveled to Texas for business; it has not recruited in Texas; it has not owned, leased, or sold property in Texas; it has not maintained bank accounts in Texas; and it has had no contacts with the plaintiffs. Sammi Limited argued that plaintiffs failed to meet their burden to allege sufficient facts to establish either general or specific personal jurisdiction over it and requested dismissal. Sammi Limited attached an affidavit made by its general manager, Kim Byeongryong (Kim), who stated that Sammi Limited did not design, manufacture, or sell a sliding line blind valve with the specific model and serial numbers as the line blind at issue.

The plaintiffs then filed a Second Amended Petition, adding allegations that Sammy Ltd is the successor in interest to Sammi Machinery, which no longer exists

as a separate entity. The plaintiffs alleged that Sammi Limited had sufficient minimum contacts with Texas because it purposefully availed itself of the privilege of conducting business in Texas, that it advertised and did business in Texas, it was aware its products would be used in Texas, and it sold and shipped its products to customers in Texas, including BP Texas, Exxon Mobil Houston, Lubrizol in Pasadena, and Oiltanking Houston. Plaintiffs also alleged that "the contacts of [Sammi Limited's] agents, apparent agents, partners, alter egos, joint venturers, downstream distributors, and/or representatives should be attributed or fused to prevent injustice, fraud, or a sham."

Plaintiffs filed a response to Sammi Limited's special appearance. Plaintiffs alleged that Kim started the Korean company Sammi Machinery in 1993, which made and sold line blind valves to companies in the oil and gas industry, that Kim dissolved Sammi Machinery in 2010, that Kim started Sammi Limited one year later, and that Sammi Limited also makes and sells line blind valves to companies in the oil and gas industry. Plaintiffs argued that considering the allegations added in its Second Amended Petition, they have met their initial burden to plead sufficient allegations to bring Sammi Limited within the reach of the Texas long-arm statute. Plaintiffs also argued that Sammi Limited failed to negate the plaintiffs' jurisdictional allegations either factually or legally.

4

Plaintiffs also argued that Sammi Machinery and Sammi Limited should be considered the same entity for purposes of jurisdiction, and that Sammi Machinery's contacts with Texas should be imputed to Sammi Limited because "the same person owned at least 89% of both companies, which made the same product, sold it to the same customers, and used the same website and logo." Plaintiffs admitted in the trial court that they asserted only specific personal jurisdiction for Sammi Machinery, and plaintiffs outlined Sammi Machinery's "minimum contacts" with Texas, specifically that Sammi Machinery designed valves for the Texas market, it maintained a business relationship with the companies that purchased or installed the valves for the Chevron unit at issue in this lawsuit, and it sold to other oil and gas companies in Texas. According to the plaintiffs, such contacts establish that Sammi Machinery intended to serve the Texas market and establish a substantial connection between its contacts in Texas and the operative facts of the litigation. Plaintiffs argue that asserting personal jurisdiction over Sammi Limited would not offend traditional notions of fair play and substantial justice because the only potential burden on Sammi Limited would be distance, and distance alone cannot ordinarily defeat jurisdiction, citing *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 155 (Tex. 2013).

5

Plaintiffs attached purchase orders dated 2005 through 2009 for purchases by Chevron in Nederland, Texas, from Sammi Machinery for blind line valves. Plaintiffs also attached transcripts of the deposition of Kim Byeongryong. Kim testified that he founded Sammi Machinery in 1993, he owned it until the end of 2010, and Sammi Limited was established in 2011. In one deposition transcript, Kim testified that he owned 89% of Sammi Limited; in the other, he testified that he owned "[n]ot quite[]" 50% of Sammi Limited, and he was the sole owner of Sammi Machinery. Kim recalled that Sammi Machinery valves were sold in the United States and specifically it sold valves to Sunbelt Supply and Strahman Valve. Kim testified that Sammi Machinery made line blind valves as well as wood-working equipment but that Sammi Limited made only line blind valves, and everything both companies made was customized. According to Kim, when Sammi Machinery shut down, it sold all its equipment and the records were discarded. Kim stated that "Sammi" is a common company name in Korea, but he was unaware of any other Korean company making line blinds. Kim agreed that Sammi Machinery and Sammi Limited used the same website address. Kim was unaware of any sales to the Chevron facility that are the basis of this lawsuit, and he denied ever having visited that facility. According to Kim, Sammi Limited did not keep or use any of Sammi Machinery's employees, equipment, or factory.

Sammi Limited filed an amended special appearance and reply in support of its original special appearance and answer. Sammi Limited argued that it was not a successor-in-interest to Sammi Machinery, that Sammi Machinery was not merged into Sammi Limited, and that

> Sammi Limited never intended to assume any of Sammi Machinery's liabilities, and Sammi Limited never took any action intended to transfer or assume any of Sammi Machinery's liabilities. [] Sammi Limited did not enter into any agreements with Sammi Machinery in which Sammi Limited agreed to assume any of Sammi Machinery's liabilities. [] There were no agreements between Sammi Limited and Sammi Machinery addressing Sammi Machinery's liabilities.

Sammi Limited also alleged that it did not design, manufacture, or sell a sliding line blind valve with the model number or serial number as the one at issue. Sammi Limited also denied that it had ever had any contact with the plaintiffs or with Chevron in Texas. Sammi Limited argued that plaintiffs' claims against it do not arise from its contacts with Texas:

> Sammi Limited did not exist when the allegedly defective sliding line blind was designed, manufactured, and sold. The sliding line blind [valve] at issue was allegedly installed in 2007, years before Sammi Limited came into existence in 2011. Accordingly, the claims against Sammi Limited could not possibly arise from any of Sammi Limited's hypothetical Texas contacts or from any allegedly tortious conduct by Sammi Limited, unless Sammi Limited agreed to assume this liability. Sammi Limited did not.

Sammi Limited argued that, under Texas law, it was not a successor-in-interest to Sammi Machinery even if it had acquired substantially all of Sammi Machinery's

7

assets because it had not expressly assumed the former entity's liabilities, and dismissal was warranted for lack of personal jurisdiction. Specifically, Sammi Limited argued that Texas law authorizes a successor to acquire the assets of a corporation without incurring any of the grantor corporation's liabilities, unless the successor expressly assumes those liabilities. *See* Tex. Bus. Orgs. Code Ann. § 10.254(b) (West 2012); *Moore v. Panini Am. Inc.*, No. 05-15-01555-CV, 2016 Tex. App. LEXIS 12008, at *15 (Tex. App.—Dallas Nov. 7, 2016, no pet.) (mem. op.).

The trial court denied Sammi Limited's special appearance without a hearing. The record includes no findings of fact and conclusions of law entered by the trial court nor any evidence that they were requested.

Issue

In one issue, Sammi Limited argues that the trial court erred in failing to grant its special appearance because the trial court lacks personal jurisdiction over Sammi Limited. Sammi Limited argues that, because it did not exist at the time of the incident, it could not have purposefully availed itself of the privilege of conducting activities in Texas in connection with the claims in this lawsuit. According to Sammi Limited, the plaintiffs have wrongly conflated Sammi Machinery and Sammi Limited, and Sammi Limited is not a successor-in-interest to Sammi Machinery.

8

Sammi Limited argues that because plaintiffs' injuries did not arise from or relate to any of Sammi Limited's contacts with Texas, the trial court should have granted the special appearance and dismissed the claims against Sammi Limited.

Standard of Review and Applicable Law

Whether a trial court has personal jurisdiction over a nonresident defendant is ultimately a question of law that we review de novo. *Moncrief Oil* , 414 S.W.3d at 150; *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794-95 (Tex. 2002). The plaintiff has the initial burden of pleading sufficient allegations to bring a nonresident defendant within the jurisdiction of a Texas court. *Moncrief*, 414 S.W.3d at 149; *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). If the plaintiff meets this initial burden, "the burden shifts to the defendant to negate all potential bases for personal jurisdiction the plaintiff pled." *Moncrief*, 414 S.W.3d at 149; *BMC Software*, 83 S.W.3d at 793. The defendant may negate the jurisdictional allegations on either a factual or a legal basis. *Kelly*, 301 S.W.3d at 659. There being no timely filed findings of fact and conclusions of law, "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software*, 83 S.W.3d at 795. If the appellate record includes the reporter's and clerk's

9

records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appellate court. *Id.*

A trial court has personal jurisdiction over a nonresident defendant if the exercise of jurisdiction is authorized by statute and is consistent with federal and state constitutional due process guarantees. *Moncrief*, 414 S.W.3d at 149; *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 2015). The Texas long-arm statute provides that certain acts constitute doing business in Texas, including, but not limited to, the following:

> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2) commits a tort in whole or in part in this state; or
>
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Tex. Civ. Prac. & Rem. Code Ann. § 17.042. Although an allegation of jurisdiction may satisfy the Texas long-arm statute, the allegation still may not necessarily satisfy the United States Constitution. *Moncrief*, 414 S.W.3d at 149. As a result, even if a court determines the facts satisfy the Texas long-arm statute, a court must also examine the facts to determine whether the exercise of personal jurisdiction over the defendant comports with due process. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996).

Asserting personal jurisdiction over a nonresident defendant comports with due process when (1) the nonresident defendant has minimum contacts with the forum state, and (2) asserting jurisdiction comports with traditional notions of fair play and substantial justice. *Retamco*, 278 S.W.3d at 338. The minimum contacts analysis requires "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The focus is on the defendant's activities and expectations. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). Only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007); *see also Walden v. Fiore*, 571 U.S. 277, 291 (2014) ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.").

A defendant's contacts may support either general jurisdiction or specific jurisdiction. *See Moncrief*, 414 S.W.3d at 150; *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010). Continuous and systematic contacts with Texas may support general jurisdiction, while specific jurisdiction

11

exists when the cause of action arises out of or relates to specific purposeful activities of the defendant in Texas. *Moncrief*, 414 S.W.3d at 150. "'[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation.'" *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 70 (Tex. 2016) (quoting *Moki Mac*, 221 S.W.3d at 585); *see also Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

General jurisdiction may only be exercised over a nonresident defendant whose contacts in the forum state are so continuous and systematic "'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction requires a more demanding minimum contacts analysis than specific jurisdiction does, and the nonresident defendant must have conducted substantial activities within the forum. *BMC Software*, 83 S.W.3d at 797. For a Texas court to exercise general jurisdiction over a nonresident, the nonresident's contacts with Texas must be continuous, systematic, and substantial. *See Goodyear*, 564 U.S. at 916, 919; *Moki Mac*, 221 S.W.3d at 575 ("If the defendant has made continuous and systematic contacts with the forum, general jurisdiction is established whether or not the defendant's alleged liability arises from those

12

contacts."). "General jurisdiction is premised on the notion of consent. That is, by invoking the benefits and protections of a forum's laws, a nonresident defendant consents to being sued there." *Am. Type Culture Collection, Inc.*, 83 S.W.3d at 808. The plaintiff must establish more than isolated or sporadic visits with the forum before such contacts will constitute the type of continuous, systematic, and substantial contacts necessary for general jurisdiction. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415-19 (1984).

Specific jurisdiction exists when there is evidence that the defendant purposefully availed itself of the forum's jurisdiction by contacts or activities in the forum state, and the cause of action arises from or is related to those contacts or activities. *Retamco*, 278 S.W.3d at 338 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *BMC Software*, 83 S.W.3d at 795-96. Under specific jurisdiction, the focus is on the relationship between the forum, the defendant, and the litigation. *Moncrief*, 414 S.W.3d at 150; *Retamco*, 278 S.W.3d at 338. There must be a substantial connection between the defendant's contacts and the operative facts of the litigation. *Moncrief*, 414 S.W.3d at 156. The contacts must be such that the defendant "should reasonably anticipate being haled into court" in Texas. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). As for tort claims, simply because the defendant directs a tort from outside the forum that occurred in

13

Texas would not be sufficient for a Texas court to automatically exercise personal jurisdiction over a nonresident because it confuses the proper focus which should be on the defendant's contacts with Texas and purposeful availment. *Michiana*, 168 S.W.3d at 790-91. We must analyze the jurisdictional contacts on a "claim-by-claim basis" unless all claims arise from the same forum contacts. *Moncrief*, 414 S.W.3d at 150-51.

When considering whether the nonresident purposefully availed itself of the privilege of conducting activities within Texas, we look at three factors: (1) whether the defendant had contacts and activity in and with Texas; (2) whether the contacts relied upon were purposeful rather than random, fortuitous, or attenuated; and, (3) whether the defendant sought some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.* at 151.

The parties do not argue that Korean law should govern the jurisdictional issue before us, and they did not ask the trial court or this Court to take judicial notice of any other nation's or state's laws; therefore, we will assume Texas law applies. *See Motor Components, LLC v. Devon Energy Corp.*, 338 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Burlington N. & Santa Fe Ry. Co. v. Gunderson, Inc.*, 235 S.W.3d 287, 290-92 (Tex. App.—Fort Worth 2007, pet. withdrawn) (absent a motion to take judicial notice of another state's laws, courts

14

may apply Texas law, and they are entitled to presume that, "whichever state's law applied, it is identical to Texas law")). The Appellant and Appellee agree that this case involves only specific jurisdiction.

Sammi Limited's Contacts with Texas

First, we examine Sammi Limited's contacts with Texas, separate and apart from any alleged relationship it had with Sammi Machinery, to determine if its own contacts are a sufficient basis for specific personal jurisdiction.

In the First Amended Petition, the plaintiffs alleged that the sliding line blinds manufactured and designed "by Defendants" were installed in 2007. In the Second Amended Petition, the live petition at the time the trial court signed the order denying the special appearance, the plaintiffs alleged that Sammi Limited does business in the United States and is the successor in interest to Sammi Machinery. Plaintiffs also alleged that:

> [T]his Defendant made sufficient minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities in Texas. This suit arises from a defective product made, sold, and shipped by this Defendant to Texas. This Defendant purposefully availed itself of the benefit, advantage, and profit of this jurisdiction. This Defendant advertised, established channels of regular communications, conducted routine sales, and maintained contractual relationships in Texas. This Defendant was aware that the product that caused the injury forming the basis of this suit would be used in Texas. This Defendant manufactured its products in compliance with American manufacturing standards. This Defendant sold and shipped its products to customers in Texas, including BP Texas, Exxon Mobil Houston, Lubrizol

15

Pasadena TX, Oiltanking Houston. In addition, the contacts of its agents, apparent agents, partners, alter egos, joint venturers, downstream distributors, and/or representatives should be attributed or fused to prevent injustice, fraud, or a sham.

In its special appearance, Sammi Limited alleged that it began business in November 2011, and it did not design, manufacture, or sell any blind line valves or have any contact with Texas before that time, and that Sammi Limited did not conduct business in Texas or sell any products or services in Texas before November 2, 2011. Therefore, Sammi Limited stated it could not have installed the line blind valves installed in 2007. Sammi Limited also alleged that it has never registered to do business in Texas; does not maintain an office in Texas; does not have any officers, employees, or agents in Texas; does not have a telephone number or address in Texas; has not held board meetings in Texas; has not had officers, directors, or employees travel to Texas for business; has never recruited a Texas resident; has not leased, owned, or sold any real or personal property in Texas; and has not maintained any bank accounts in Texas.

In their response to Sammi Limited's special appearance, the plaintiffs stated that Sammi Limited did not address and failed to negate the specific jurisdictional allegations in the Second Amended Petition. Plaintiffs also alleged that Kim started Sammi Machinery in 1993 and sold valves to companies in the oil and gas industry in Texas; that Kim dissolved Sammi Machinery in 2010 and one year later formed

16

Sammi Limited, which also makes and sells line blind valves to companies in the oil and gas industry; and that Sammi Limited uses the same website and logo used by Sammi Machinery. According to the plaintiffs, they sufficiently alleged that Sammi Limited was doing business in Texas and committed a tort in whole or in part in Texas and the pleadings bring Sammi Limited within the Texas long-arm statute.

The plaintiffs' jurisdictional allegations fall short because they do not allege that the plaintiffs' claims *arise out of or relate to* Sammi Limited's contacts with Texas. Specific jurisdiction is limited to claims that "arise out of or relate to" a non-resident's forum contacts. *Burger King*, 471 U.S. at 472 (quoting *Helicopteros*, 466 U.S. at 414); *Retamco*, 278 S.W.3d at 338. In such cases, there must be a "substantial connection" between the defendant's contacts and the operative facts of the litigation. *See Moki Mac*, 221 S.W.3d at 585. Here, the plaintiffs allege that their injuries resulted from a defective valve installed in 2007, and any contacts Sammi Limited may have had with Texas—even if purposefully to avail itself of the benefits of doing business in Texas—could only have occurred after that date because Sammi Limited was not formed until November 2011. Thus, the plaintiffs' claims could not have related to Sammi Limited's contacts. Although plaintiffs alleged that "[t]his suit arises from a defective product made, sold, and shipped by this Defendant to Texas[,]" the purchase orders in the record are dated from 2005 through 2009 and

17

show sales of a Sammi Machinery product. The affidavit and other evidence submitted with the special appearance and amended special appearance rebutted the allegations and shifted the burden back to the Plaintiffs. *See Kelly*, 301 S.W.3d at 659. On the record before us, we conclude that the plaintiffs did not assert sufficient allegations demonstrating that plaintiffs' claims *arise out of or relate to* Sammi Limited's contacts with Texas that would establish specific personal jurisdiction. However, that does not end our analysis because the plaintiffs contend that Sammi Machinery's contacts may be imputed to Sammi Limited.

Imputing Sammi Machinery's Contacts to Sammi Limited

The plaintiffs allege that Sammi Machinery manufactured the blind line valve that was installed at the Chevron facility in 2007; Chevron ordered blind line valves by purchase orders from 2005 to 2009; Sammi Machinery was owned by Kim until Kim dissolved it in 2010 and formed Sammi Limited; and Sammi Limited uses the same website and logo used by Sammi Machinery.

Appellant Sammi Limited argues that it is not a successor-in-interest to Sammi Machinery and that any of Sammi Machinery's contacts with Texas cannot, as a matter of law, be imputed to it for purposes of determining personal jurisdiction. Sammi Limited argues that (1) under Texas law, an entity may acquire assets of an earlier-formed entity without incurring the earlier entity's liabilities, unless the

18

acquiring entity expressly assumes those liabilities and (2) there is no evidence that Sammi Limited expressly agreed to assume the liabilities of Sammi Machinery.

The plaintiffs argued to the trial court that Sammi Machinery's contacts in Texas may be imputed to Sammi Limited for the purposes of determining personal jurisdiction, citing *Ho Wah Genting Kintron Sdn Bhd v. Leviton Mfg. Co.*, 163 S.W.3d 120, 129 (Tex. App.—San Antonio 2005, no pet.). In *Ho Wah*, the San Antonio court concluded that the evidence was sufficient to support an implied finding that a later entity was the successor-in-interest to an earlier entity under a name change and that the earlier entity's contacts with Texas could be imputed to the later entity. *Id.* at 129.

Sammi Limited disagreed and argued that *Ho Wah* is factually distinguishable because the Director of Marketing in that case had testified that the defendant was the same company as the earlier entity that had manufactured the allegedly defective product, and simply operating under a different name. *Id.* at 128-29. Sammi Limited argues that under Texas law, an acquiring company does not become a successor-in-interest except by expressly agreeing to assume the liabilities of the acquired entity. *See* Tex. Bus. Orgs. Code Ann. § 10.254(b); *Moore*, 2016 Tex. App. LEXIS 12008, at *15 (citing *E-Quest Mgmt., L.L.C. v. Shaw*, 433 S.W.3d 18, 23-24 (Tex. App.—

19

Houston [1st Dist.] 2013, pet. denied); *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 139 (Tex. App.—Houston [1st Dist.] 2000, pet. denied)).

"When used as a legal term applying to corporations, the term 'successor' has a restricted meaning." *Sitaram v. Aetna U.S. Healthcare of N. Tex., Inc.*, 152 S.W.3d 817, 826 (Tex. App.—Texarkana 2004, no pet.). A successor is not the same as a third-party purchaser. *See Farm & Home Sav. Ass'n v. Strauss*, 671 S.W.2d 682, 685 (Tex. App.—Dallas 1984, no writ). Rather, a successor-in-interest is an entity that assumes the burdens and becomes invested with the rights of another entity by some form of legal succession. *See M&E Endeavours LLC v. Cintex Wireless LLC*, No. 01-15-00234-CV, 2016 Tex. App. LEXIS 4109, at *7 (Tex. App.—Houston [1st Dist.] Apr. 19, 2016, no pet.) (citing *CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 896 (Tex. App.—Dallas 2007, pet. denied)).

"Under a successor corporation liability theory, a nonresident defendant corporation not otherwise subject to personal jurisdiction in the forum state becomes so by virtue of succeeding to a corporation that was subject to personal jurisdiction in the forum state." *Shapolsky v. Brewton*, 56 S.W.3d 120, 136 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997)), *abrogated on other grounds by Michiana*, 168 S.W.3d 777. In *Shapolsky*, the Fourteenth Court explained that the Texas Business Corporations Act

20

(the predecessor of the current Texas Business Organizations Code) governs the liability of an acquiring corporation. *Id.* at 137. The Act provided that the purchase of all or substantially all of the assets of a seller corporation does not make the acquiring corporation liable for the seller's liabilities or obligations unless the acquiring entity expressly assumed those liabilities or obligations or as provided for in another statute. *Id.* at 137 (citing former Tex. Bus. Corp. Act Ann. art. 5.10(B)(2); *Lockheed Martin Corp*, 16 S.W.3d at 134-35).

In amending article 5.10 in 1979, the Legislature added section B, which provides that the acquisition of assets does not make the acquiring entity responsible for the former entity's liabilities or obligations not expressly assumed. *See* Tex. Bus. Corp. Act. Ann. art. 5.10(B) (West 1980). The stated purpose of this amendment was "to preclude the application of the doctrine of de facto merger" under which the acquiring entity could be held responsible for the seller's liabilities in the absence of a contractual agreement. *Id.* cmt. 2. The *Shapolsky* court explained that, therefore, the Act as amended in 1979 precluded application of both the "de facto merger doctrine" and the "mere continuation" theory as exceptions to the general rule against successor liability. 56 S.W.3d at 137-38 (citing Tex. Bus. Corp. Act Ann. art. 5.10 cmt. 2; *Mudgett v. Paxson Mach. Co.*, 709 S.W.2d 755, 758 (Tex. App.— Corpus Christi 1986, writ ref'd n.r.e.)); *see also Suarez v. Sherman Gin Co.*, 697

21

S.W.2d 17, 20 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (explaining that the legislature amended the Act in 1979 to statutorily preclude application of the de facto merger doctrine in Texas clearly stating a public policy opposed to the doctrine). With the legislative intent behind article 5.10 in mind, the *Shapolsky* court concluded that a "mere continuation" theory could not be used to impute the contacts of a seller corporation to an acquiring corporation for purposes of establishing personal jurisdiction and that "Texas courts may not assert personal jurisdiction" over an acquiring corporation based on its purchase of an earlier entity's assets. 56 S.W.3d at 138, 139; *see also Motor Components, LLC*, 338 S.W.3d at 205 ("[U]nder Texas law, we do not automatically impute the predecessor's jurisdictional contacts to the successor.").

Under section 10.254(b) of the Business Organizations Code, which replaced the former Texas Business Corporations Act, "[e]xcept as otherwise expressly provided by another statute, a person acquiring property described by this section may not be held responsible or liable for a liability or obligation of the transferring domestic entity that is not expressly assumed by the person." Tex. Bus. Orgs. Code § 10.254(b). Section 1.002 of the Business Organizations Code states that a domestic entity "is formed under this code or the entity's internal affairs are governed by this code." *See* Tex. Bus. Orgs. Code Ann. § 1.002(17) (West Supp. 2018). This section

also defines a foreign entity as "an organization formed under, and the internal affairs of which are governed by, the laws of a jurisdiction other than this state." *Id.* § 1.002(28).

On appeal, Appellees argue that section 10.254(b) does not apply to foreign entities like Sammi Machinery and Sammi Limited, so the presumption against continuation does not apply. The Houston Fourteenth Court concluded that the earlier codification of the statute eliminated the "continuation theory" of liability as to both domestic and foreign corporations, but the current version applies only to domestic entities. *See Motor Components, LLC*, 338 S.W.3d at 205 (citing Tex. Bus. Orgs. Code Ann. § 10.254 (formerly Tex. Bus. Corp. Act Ann. art. 5.10(B)); *Lockheed Martin Corp.*, 16 S.W.3d at 139.

Even assuming without deciding that section 10.254(b) of the Business Organizations Code does not apply to Sammi Limited, Appellees argued during oral argument in this Court that the "Restatement Law" applied. We note that the Third Restatement of Torts provides:

> A successor corporation or other business entity that acquires assets of a predecessor corporation or other business entity is subject to liability for harm to persons or property caused by a defective product sold or otherwise distributed commercially by the predecessor if the acquisition:
>
> (a) is accompanied by an agreement for the successor to assume such liability; or

23

(b) results from a fraudulent conveyance to escape liability for the debts or liabilities of the predecessor; or

(c) constitutes a consolidation or merger with the predecessor; or

(d) results in the successor becoming a continuation of the predecessor.

Restatement (Third) of Torts: Products Liability § 12; *see also Ford Bacon & Davis, L.L.C. v. Travelers Ins. Co.*, 635 F.3d 734, 737 (5th Cir. 2011) (explaining that Texas law does not have a product-line successor liability rule and that Texas law explicitly states that an acquiring company may not be held responsible for a liability of the transferring entity that it does not expressly assume) (citing *Keller Founds., Inc. v. Wausau Underwriters Ins. Co.*, 626 F.3d 871, 877 (5th Cir. 2010)); *Lockheed Martin Corp.*, 16 S.W.3d at 134, 139 ("Texas strongly embraces the non-liability rule.").

In their response to Sammi Limited's special appearance, Appellees argued that

> Sammi [Ltd] and Sammi Machinery should be considered the same entity for purposes of this Court's jurisdictional analysis. The evidence establishes that the same person owned at least 89% of both companies, which made the same product, sold it to the same customers, and used the same website and logo.

In their Second Amended Petition, plaintiffs pleaded that Sammi Limited was formerly known as and is the successor-in-interest to Sammi Machinery. Appellees argued that there is no "meaningful difference" between the two companies and that Sammi Machinery's contacts may be imputed to Sammi Limited. Sammi Limited

denied this allegation and responded that Sammi Machinery was not merged into Sammi Limited; that Sammi Limited was not a continuation of Sammi Machinery; and that Sammi Limited did not agree to assume any of Sammi Machinery's liabilities. Sammi Limited also denied it is a wholly-owned subsidiary of defendants Sammi Line Blind BeNeLux and PandID B.V. Appellees never argued that Sammi Limited expressly assumed the liabilities of Sammi Machinery. In his deposition, Kim expressly denied that Sammi Limited took over Sammi Machinery's factory, took on any of Sammi Machinery's employees, or bought any of Sammi Machinery's equipment. And in his second declaration (affidavit), Kim denied that Sammi Limited "took any action intended to transfer or assume any of Sammi Machinery's liabilities[]" and Sammi Limited denied entering into any agreements expressly assuming any of Sammi Machinery's liabilities. In his deposition, Kim denied that Sammi Limited bought the "Sammi" name from Sammi Machinery. Kim did admit that Sammi Limited used the same website that Sammi Machinery had used.

On this record, we conclude that Sammi Limited met its burden to negate the jurisdictional allegations in plaintiffs' pleadings. *See Moncrief*, 414 S.W.3d at 149. Sammi Limited denied that it had acquired the assets of, merged with, or was a continuation of Sammi Machinery, and also denied that it had assumed any liabilities

25

of Sammi Machinery, as evidenced by Kim's verified declarations. The plaintiffs' response emphasized that Kim started Sammi Machinery in 1993 and sold valves to customers in the companies in the oil and gas industry in Texas; Kim dissolved Sammi Machinery in 2010 and one year later formed Sammi Limited, which also makes and sells line blind valves to companies in the oil and gas industry; and, Sammi Limited uses the same website and logo used by Sammi Machinery. According to the plaintiffs, at the time of the suit Sammi Limited was doing business in Texas and, as a successor to Sammi Machinery, it committed a tort in whole or in part in Texas and the pleadings bring Sammi Limited within the Texas long-arm statute.

On the record before us, we conclude that the evidence is legally and factually insufficient to support a finding that Sammi Limited was a successor-in-interest to Sammi Machinery. *Compare Ho Wah*, 163 S.W.3d at 129 (where the evidence was legally and factually sufficient to support an implied finding of successor-in-interest under a mere name change). The record contains no purchase agreement, document, or testimony indicating the Sammi Limited assumed the liabilities of Sammi Machinery. Sammi Machinery and Sammi Limited were separate legal entities according to the formation and termination documents attached to Kim's declarations, and according to the deposition testimony. Therefore, we presume they

are distinct entities. *BMC Software*, 83 S.W.3d at 798. "One corporation's jurisdictional contacts cannot be imputed to another simply by 'blurring the distinction' between them." *Motor Components, LLC*, 338 S.W.3d at 203 (citing *All Star Enters., Inc. v. Buchanan*, 298 S.W.3d 404, 422 (Tex. App.—Houston [14th Dist.] 2009, no pet.)).

Texas law does not provide a basis for Sammi Machinery's contacts with Texas to be imputed to Sammi Limited under a successor-in-interest liability theory.[2] *See Shapolsky*, 56 S.W.3d at 137-38; *see also Moki Mac*, 221 S.W.3d at 575 (stating the general rule that "only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person[]").[3] Similarly,

---

[2] Although we apply Texas law herein, we note that in *Funai Elec. Co. v. Daewoo Elecs. Corp.*, No. C-04-01830 JCS, 2008 U.S. Dist. LEXIS 123927, at **20-31 (N.D. Cal. July 22, 2008), the United States District Court for the Northern District of California addressed successor liability under Article 42 of the Korean Commercial Code. That court concluded that Korean law allows for successor liability only where there is an express contractual provision providing for such liability or where the successor and predecessor companies share the same name and there has been no disclaimer of liability. *Id.* at **30-31; *see also* Statutes of the Republic of Korea, Commercial Act, article 42 (Act No. 13523, Dec. 1, 2015), http://elaw.klri.re.kr/eng_service/lawView.do?hseq=37127&lang=ENG (last accessed June 10, 2019).

[3] Plaintiffs also pleaded that Sammi Limited is subject to specific personal jurisdiction through "the contacts of its agents, apparent agents, partners, alter egos, joint venturers, downstream distributors, and/or representatives[.]" The Appellees failed to brief any of these allegations at trial or on appeal, and we need not discuss these alleged theories. *See* Tex. R. App. P. 38.1(f).

even if we were to apply the Restatement Third to this matter, the plaintiffs have failed to assert sufficient facts to satisfy any of the exceptions to the general rule of non-liability. Finally, we need not determine whether Sammi Machinery's contacts were sufficient to establish personal jurisdiction over Sammi Machinery. *See* Tex. R. App. P. 47.1.

In conclusion, we have determined that the plaintiffs failed to allege or establish that Sammi Limited's contact with Texas had a "substantial connection" to the operative facts of the litigation, and therefore the trial court lacked specific jurisdiction over Sammi Limited based on its contacts with Texas. We have also concluded that Sammi Machinery's contacts cannot be imputed to Sammi Limited as a successor-in-interest, and we rejected the application of either the de facto merger doctrine or the continuation theory. We need not address the arguments that exercising jurisdiction over Sammi Limited offends traditional notions of fair play and substantial justice. *See Moki Mac*, 221 S.W.3d at 585-88 (omitting consideration of this due-process requirement after concluding that there was no substantial connection between the defendant's conduct and the operative facts of the litigation); *Motor Components, LLC*, 338 S.W.3d at 206.

We sustain the Appellant's issue, reverse the trial court's order and remand the case with instructions to the trial court to dismiss Appellant and to sever the claims against it from the remainder of the action.

REVERSED AND REMANDED.

_____
LEANNE JOHNSON
Justice

Submitted on June 6, 2019
Opinion Delivered July 11, 2019

Before McKeithen, C.J., Horton and Johnson, JJ.

29