**Affirmed and Memorandum Opinion filed May 14, 2024.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-22-00934-CV**

---

**M-I, L.L.C., Appellant**

**V.**

**CALIFORNIA RESOURCES CORPORATION, Appellee**

---

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2022-37256**

---

## MEMORANDUM OPINION

In this appeal from a final judgment dismissing appellant M-I, LLC's (Drilling Contractor) claims against appellee California Resources Corporation (Lease Operator) for want of personal jurisdiction, Drilling Contractor argues the trial court erred in finding that the Master Services Agreement (MSA) between the parties did not establish the Lease Operator's consent to personal jurisdiction in Texas. Drilling Contractor alternatively argues that, even if the MSA does not provide for jurisdiction, Lease Operator's contacts with Texas are sufficient to

establish specific personal jurisdiction over Lease Operator. Concluding that Drilling Contractor did not meet its burden to establish the trial court's personal jurisdiction over Lease Operator, we affirm the judgment of the trial court.

## I.     BACKGROUND

Several California residents (the Kern County plaintiffs) filed suit against Lease Operator in 2015 in Kern County, California for California state labor-law violations arising out of working conditions on California oil and gas drilling locations. The Kern County plaintiffs also named two other onsite contractors, but not Drilling Contractor, even though the Kern County plaintiffs allege that Drilling Contractor recruited and hired two of the three Kern County plaintiffs. The Kern County plaintiffs allege that Lease Operator was their joint employer and controlled various conditions of their employment.

Lease Operator sought indemnification from Drilling Contractor, which Drilling Contractor refused. Lease Operator filed a "cross complaint" in 2022 in the Kern County suit against Drilling Contractor seeking to add Drilling Contractor as a third-party defendant to address Lease Operator's claims for contractual indemnity, equitable indemnity, implied contractual indemnity, contribution, and declaratory relief.[1] The contractual-indemnity obligations between Lease Operator and Drilling Contractor are set forth in the 2005 MSA between Drilling Contractor and Occidental Oil and Gas Company, Lease Operator's predecessor in interest.[2]

Drilling Contractor then filed suit in June 2022 in Harris County district

---

[1] The Kern County plaintiffs had allegedly already sued and settled with Drilling Contractor over the labor-law violations at issue; therefore, Drilling Contractor could not be added to the Kern County suit as a defendant.

[2] In the Kern County court filings, Lease Operator explains that it was "spun off" from Occidental and agreed to assume the liabilities of Occidental and its affiliates arising from Occidental's oil and gas exploration activities in California. The parties do not dispute that Lease Operator is entitled to enforce the MSA between Occidental and Drilling Contractor.

court seeking a declaratory judgment that: (1) Texas law should apply to the dispute; (2) Lease Operator is not entitled to indemnification from Drilling Contractor under the terms of the MSA; (3) Lease Operator is not entitled to equitable and implied contractual indemnification from Drilling Contractor; and (4) Lease Operator is not entitled to contribution from Drilling Contractor.

Lease Operator filed a special appearance in the Harris County suit and argued that it was not subject to personal jurisdiction in Texas. After a hearing, the trial court granted the special appearance and dismissed Drilling Contractor's claims against Lease Operator without prejudice. Drilling Contractor now appeals from that final judgment.

## II.    ANALYSIS

In two issues on appeal, Drilling Contractor argues the district court erred in ruling that it did not have personal jurisdiction over Lease Operator because (1) Lease Operator voluntarily submitted to Texas jurisdiction for the adjudication of the liabilities and responsibilities under the MSA and (2) Lease Operator was subject to specific personal jurisdiction in Texas by virtue of its ongoing contractual relationship with Drilling Contractor, as well as its other contacts with this State.

### A.    Standard of review

Whether a trial court has personal jurisdiction over a defendant is a question of law that we review de novo, but the trial court frequently must resolve questions of fact in order to decide the issue. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

A trial court should resolve a party's special appearance based on the

pleadings, any stipulations between the parties, affidavits and attachments filed by the parties, relevant discovery, and any oral testimony put forth before the court. *See* Tex. R. Civ. P. 120a(3).

## B.    Jurisdictional-pleading requirements

Our special-appearance jurisprudence dictates that the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction. We have consistently held that the plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–.045 (long-arm jurisdiction in suit on business transaction or tort). Here, Drilling Contractor satisfied its burden of pleading sufficient allegations to bring Lease Operator within the reach of the Texas long-arm statute by asserting that Lease Operator consented to personal jurisdiction in Texas pursuant to a forum-selection clause in the MSA.

Next, Lease Operator had the burden to present sufficient evidence to defeat Drilling Contractor's allegations and negate all bases of personal jurisdiction. *Kelly*, 301 S.W.3d at 658–59 ("Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts[.]"). Lease Operator relies on the MSA to establish that it did not consent to personal jurisdiction in Texas for purposes of the underlying indemnity dispute arising from the Kern County lawsuit and also presented an unsworn declaration verifying its jurisdictional facts which negate any basis for specific personal jurisdiction.

Drilling Contractor could then "respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court

4

with evidence establishing personal jurisdiction." *Id.* at 659.

## C.     Specific personal jurisdiction

There is no allegation that Lease Operator is subject to general jurisdiction in Texas. It is undisputed that Lease Operator is incorporated in Delaware, has its principal place of business in California, and operates exclusively within California. Therefore, this appeal involves only questions of specific personal jurisdiction.

Courts have personal jurisdiction over a nonresident defendant when the state's long-arm statute permits such jurisdiction and the exercise of jurisdiction is consistent with federal and state due-process guarantees. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). The Texas long-arm statute broadly allows courts to exercise personal jurisdiction over a nonresident who is doing "business in this state" and "commits a tort in whole or in part in this state." Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2). The broad "doing business" language in the Texas long-arm statute allows the exercise of personal jurisdiction to "reach[ ] as far as the federal constitutional requirements of due process will permit." *U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977) (interpreting former Revised Statutes art. 2031b, Act of Mar. 18, 1959, 56th Leg., R.S., ch. 43, § 4, 1959 Tex. Gen. Laws 85, 85–86) (amended 1979) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 17.042). Due process is satisfied when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Minimum contacts, sufficient to establish specific jurisdiction over a nonresident defendant, exist when (1) the defendant's contacts with the forum state

are purposeful and (2) the litigation arises from or relates to those contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In conducting a specific-jurisdiction analysis, we focus on the relationship among the defendant, the forum, and the litigation. *See Helicopteros Nacionales de Colom. v. Hall*, 466 U.S. 408, 414 (1984); *Shaffner v. Heitner*, 433 U.S. 186, 204 (1977). The nonresident defendant must take action that is purposefully directed at the forum state. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 577 (Tex. 2007). To determine whether the nonresident defendant purposefully directed action toward Texas, we examine the nonresident defendant's conduct indicating an intent or purpose to serve the Texas market. *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987); *Moki Mac*, 221 S.W.3d at 577. When a nonresident defendant is subject to specific jurisdiction, the trial court may exercise jurisdiction over the defendant even if the defendant's forum contacts are isolated or sporadic. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). Specific jurisdiction is established when the defendant's alleged liability "aris[es] out of or [is] related to" an activity conducted within the forum. *Helicopteros*, 466 U.S. at 414 n.8.

## D. Forum-selection clause

In issue one, Drilling Contractor argues that the MSA between the two companies included a forum-selection clause and a consent by Lease Operator to jurisdiction in Texas, satisfying the requirement that Lease Operator purposely availed itself of the laws and protections in Texas.

Contractual forum-selection clauses allow contracting parties to "preselect the jurisdiction for dispute resolution." *Rieder v. Woods*, 603 S.W.3d 86, 93 (Tex. 2020). Personal jurisdiction is a waivable right and courts have long recognized legal and contractual arrangements by which a litigant may give express or implied

consent to the jurisdiction of a court. *Burger King*, 471 U.S. at 473 n.14. So long as such contracts are "freely negotiated" and not "unreasonable or unjust," they will be enforced. *Id*. (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Forum-selection clauses are presumptively valid in Texas and must be enforced "unless the party opposing enforcement clearly shows '(1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial.'" *Rieder*, 603 S.W.3d at 93 (quoting *In re ADM Inv. Servs., Inc.*, 304 S.W.3d 371, 375 (Tex. 2010)).

"Forum-selection clauses are creatures of contract," so the clause's language dictates its reach and determines whether the parties' claims fall within its scope. *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 443 (Tex. 2017).

Construction of a contract is a question of law we review de novo. *Rieder*, 603 S.W.3d at 94. "[O]ur primary objective is to ascertain the parties' true intentions as expressed in the language they chose." *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015). We construe a contract in a manner that gives "effect to the parties' intent expressed in the text," but we may also take into account "the facts and circumstances surrounding the contract's execution." *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 22 (Tex. 2014).

### 1. Contractual language

The MSA contains a general forum-selection provision in section 19.1:

> TO THE EXTENT APPLICABLE, THE PARTIES AGREE THAT
> THE GENERAL MARITIME LAW OF THE U.S. SHALL
> GOVERN THIS AGREEMENT, WITHOUT THE APPLICATION
> OF CHOICE OF LAWS RULES OTHERWISE THE LAWS OF
> THE STATE OF TEXAS SHALL GOVERN THIS AGREEMENT

7

WITHOUT THE APPLICATION OF CHOICE OF LAWS RULES THE PARTIES VOLUNTARILY SUBMIT TO THE JURISDICTION AND VENUE OF THE FEDERAL OR STATE COURTS OF THE STATE OF TEXAS FOR THE ADJUCATICATION OF THEIR LIABILITIES AND RESPONSIBILITIES UNDER THIS AGREEMENT[.]

However, the next section (19.2) establishes, *notwithstanding the general provision above*, more specific forum-selection provisions for several different jurisdictions in which Occidental conducted operations.[3] The forum-selection provision for services in California is as follows:

> Notwithstanding Section 19.1 above, the Parties mutually agree that (i) with respect to Commercial Terms regarding services and/or the provision of materials in the State of California, the laws of the State of California shall govern such Commercial Terms and the terms of this Agreement as between the parties to such Commercial Terms, without the application of choice of laws rules and that the parties to such Commercial Terms shall voluntarily submit to the jurisdiction and venue of the courts of Kern County, California for the adjudication of their liabilities and responsibilities[.]

The MSA clearly expresses the parties' intent that section 19.2 controls over the more general section 19.1 "with respect to Commercial Terms regarding services." *See NuStar Energy, L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461, 466 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (parties may choose to set out general rule in one provision and exceptions to rule in other provisions); *Grynberg v. Grey Wolf Drilling Co., L.P.*, 296 S.W.3d 132, 137 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994)) ("[t]o the extent of any conflict, specific provisions control over more general ones").

---

[3] Both sections 19.1 and 19.2 establish consent and venue for disputes falling within their scope.

The parties' competing interpretations of the MSA turn on whether the underlying dispute arises "with respect to Commercial Terms regarding services." The MSA defines "Commercial Terms" as follows:

> [Occidental] may from time to time, through one or more affiliates, request that [Drilling Contractor] perform services and/or provide materials and/or equipment to [Occidental] (such performance or services and/or provision of materials and/or equipment, the "Work"), on a nonexclusive basis under this Agreement. Such requests (each, the "Commercial Terms") shall be in writing. . . and shall establish the relevant scope of Work and resulting Compensation. Any Commercial Terms agreed to by the Parties shall incorporate this Agreement whether mentioned or not.

The language of the MSA is unambiguous that the Commercial Terms are part of the MSA. Although set forth in a separate writing, the Commercial Terms expressly incorporate all the terms of the MSA, including the indemnity language, and are designed to outline the scope of work and compensation or payment for that scope of work. Similarly, all provisions in the MSA are defined to include any applicable Commercial Terms: "The MASTER SERVICE AGREEMENT . . . (together with any applicable Commercial Terms issued hereunder, this 'Agreement' or this 'Contract')[.]" The language in the Statement of Commercial Terms similarly mirrors the language of the MSA.[4]

## 2. Trial court's findings

The trial court found that Lease Operator is incorporated in Delaware and has its principal place of business in California. The trial court further found that Lease Operator operates exclusively in California and lacks minimum contacts with Texas.

The trial court further found that section 19.1 of the Agreement "is a general

---

[4] The Commercial Terms are memorialized in the Statement of Commercial Terms.

and voluntary choice of venue provision that applies to circumstances not covered by Section 19.2's more specific provisions pertaining to 'services' provided in California." The trial court also found that the Kern County suit arises out of the work performed by Drilling Contractor's employees at Lease Operator's drilling sites and concluded that the Kern County suit was a dispute pertaining to "services" as contemplated by section 19.2 of the MSA.

The trial court then concluded that Lease Operator did not consent to personal jurisdiction in Texas and that Lease Operator negated all bases for personal jurisdiction over the indemnity dispute in Texas.

### 3.     No consent to jurisdiction in Texas for the underlying dispute

Although section 19.1 does provide a general consent to jurisdiction in Texas, we cannot read section 19.1 in isolation as sections 19.1 and 19.2 were intended to be read together. *See Pinto Tech. Ventures,* 526 S.W.3d at 443 ("the clause's language dictates its reach").

The underlying dispute is one of indemnity. Lease Operator seeks indemnity from Drilling Contractor pursuant to the MSA which provides that Drilling Contractor shall "defend, hold harmless and indemnify" Lease Operator from any claims "asserted by [Drilling Contractor and its employees] and arising out of or related to this Agreement." Two of the Kern County plaintiffs allege they were recruited and employed by Drilling Contractor. Although the Kern County plaintiffs allege that Lease Operator was a joint employer with Drilling Contractor, Drilling Contractor does not dispute that it hired, trained, and provided the Kern County plaintiffs to Lease Operator as part of agreed Commercial Terms. Therefore, the Kern County suit and the resulting request for indemnity arise from and are related to the Commercial Terms.

Drilling Contractor argues that that a dispute over indemnity is governed by the MSA itself and is not part of the Commercial Terms. Specifically, Drilling Contractor asserts that questions of indemnity are not Commercial Terms, and not found in the Commercial Terms. Therefore, Drilling Contractor maintains the indemnity dispute should be governed by section 19.1, and not section 19.2. This argument attempts to conceptually separate the services provided by Drilling Contractor under the Commercial Terms from the request for indemnity. A right to indemnification is governed by both contract and facts. *See D.R. Horton-Tex., Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2009) ("While analysis of the duty to defend has been strictly circumscribed by the eight-corners doctrine, it is well settled that the 'facts actually established in the underlying suit control the duty to indemnify.'"). The facts or situation giving rise to a right to indemnity are a critical component of determining the indemnification. *See id*. Therefore, we disagree with Drilling Contractor that the Commercial Terms that gave rise to a claim for indemnity can be conceptually separated from the request for indemnity and the analysis of indemnity. Further, Drilling Contractor's argument is difficult to reconcile with the express language of the MSA (and Commercial Terms) which incorporate all the terms of the MSA into the Commercial Terms (and vice versa). The language of the agreement explicitly and repeatedly reaffirms that there is a single MSA agreement in which all the terms agreed to by the parties are incorporated.

The next question raised by Drilling Contractor's arguments is whether the consent to jurisdiction found in section 19.2 applies only to those matters explicitly addressed in Commercial Terms—as Drilling Contractor argues—or whether section 19.2 casts a broader net. In the language of the MSA, the parties agreed that section 19.2 would apply to "Commercial Terms regarding services and/or the

provision of materials in the State of California." The language of the MSA notably does not state that section 19.2 applies only to the language found in the Commercial Terms. Instead, the MSA specifically broadens the application of section 19.2 to "Commercial Terms regarding services and/or the provision of materials in the State of California."

The intent of section 19 generally and section 19.2 specifically is to resolve disputes between the parties in the courts of the state in which the scope of work giving rise to the dispute occurred. The default provision—section 19.1—applies to any disputes between the parties which do not involve Commercial Terms. Drilling Contractor's argument that all indemnity disputes between the parties would be governed by the general indemnity provision in section 19.1 does not find support in the language or structure of the MSA.[5] Therefore, section 19.2 sets forth the jurisdiction and venue for disputes between the parties arising from the services provided in the State of California as part of any applicable Commercial Terms.

The Kern County suit arises out of Commercial Terms, which called for Drilling Contractor to provide services—through trained employees—and materials to Lease Operator in California. The indemnity dispute necessarily also arises out of the Commercial Terms. Based on the disputed matter in this appeal, we conclude that Drilling Contractor did not meet its burden in establishing that Lease Operator consented to personal jurisdiction in Texas by virtue of its agreement to the MSA.

Drilling Contractor relies on a case decided by our sister court to support its position that the forum-selection provision in the MSA operated as Lease

---

[5] We also note that there is no explicit language in the MSA that provides that the parties' consent to jurisdiction and venue in Texas is for any and all disputes over indemnity.

Operator's consent to personal jurisdiction in Texas for any indemnity dispute between the parties. *See Irani Eng'g, Inc. v. Arcadia Gas Storage, LLC*, No. 01-21-00113-CV, 2022 WL 3588746, at *4 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, no pet.) (mem. op.). However, the case does not support Drilling Contractor's broad contractual interpretation. In *Irani*, there was a facilities-access agreement that contained a choice-of-law provision and consent to jurisdiction in Texas. The defendant in *Irani* first argued that a different consulting agreement, which contained a competing forum-selection provision, controlled. However, a signed copy of the consulting agreement was never located or introduced into evidence and our sister court declined to disturb the trial court's credibility determination on conflicting evidence. The defendant in *Irani* alternatively argued that the forum-selection clause in the facilities-access agreement should not be enforced because it was overreaching and unjust. However, our sister court concluded that appellant did not show that enforcement would be unfair, unjust, or overreaching. *Id*. at *5. The court further described that the defendant was an experienced service provider in the oil and gas industry and that it was not the court's role to protect the defendant from its agreements. *Id*. at *4. Although both cases involve a contractual agreement with forum-selection clauses, that is where the similarities end. We conclude that *Irani* is not instructive in resolving the contractual dispute between Drilling Contractor and Lease Operator.

We overrule Drilling Contractor's first issue.

### E.     Other evidence of contacts with Texas

If the MSA does not provide consent to jurisdiction, Drilling Contractor alternatively argues that "[Lease Operator's] 8+ year contractual relationship with [Drilling Contractor] along with its other contacts with Texas, which are undisputed, support judgment for [Drilling Contractor] based on Texas' long-arm

statute and the federal Constitution's due process requirements." Lease Operator's other alleged contacts include the fact it was "born from a Texas company, [and] came back to file bankruptcy in Texas[.]"

Drilling Contractor argues that Lease Operator is subject to *specific* personal jurisdiction in Texas, because Lease Operator was conducting business pursuant to a contract with a Texas-based entity. Utilizing the services of an individual or company based in Texas to perform drilling services at locations in California through individuals hired and employed in California, without more, does not reflect that Lease Operator purposely established minimum contacts with Texas. *See Burger King*, 471 U.S. at 478 (individual's contract with out-of-state party alone cannot automatically establish sufficient minimum contacts in other party's home forum); *see also Peredo v. M. Holland Co.*, 310 S.W.3d 468, 474–75 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[A] nonresident does not establish minimum contacts simply by contracting with a Texas entity and engaging in numerous communications, by telephone or otherwise, with people in Texas concerning the contract."); *Blair Commc'ns, Inc. v. SES Survey Equip. Servs., Inc.*, 80 S.W.3d 723, 729 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("Merely contracting with a Texas resident does not satisfy the minimum contacts requirement[;] [n]or is jurisdiction justified by the single fact that a contract is payable in Texas.") (internal citations omitted).

Drilling Contractor also argues that Lease Operator was created by or "born of" a Texas-based entity. However, Occidental—the Texas entity—and Lease Operator are separate corporations, and Texas law presumes they are distinct entities. *See BMC Software Belg.*, 83 S.W.3d at 798. Therefore, we cannot impute Occidental's forum contacts to Lease Operator without more.[6] *See Motor*

---

[6] We also note that Texas law does not create automatic liability for corporate successors.

*Components, LLC v. Devon Energy Corp.*, 338 S.W.3d 198, 203–04 (Tex. App.—Houston [14th Dist.] 2011, no pet.). We are aware of no support under Texas law—and Drilling Contractor cites to none—for the proposition that a corporation's jurisdictional contacts are imputed automatically to a nonresident that succeeds to the corporation's contract rights.

Further, other than the MSA which has been discussed at length, Drilling Contractor does not draw any nexus between Lease Operator's creation in Texas and the operative facts of the underlying indemnity dispute. *See generally Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 14? (Tex. 2021) ("This so-called relatedness inquiry defines the appropriate nexus between the nonresident defendant, the litigation, and the forum.") (internal quotation marks omitted). Similarly Drilling Contractor's argument that Lease Operator filed for bankruptcy in Texas does not offer any explanation of how that bankruptcy proceeding established a relationship between Drilling Contractor, Texas, and the operative facts of this litigation.

Here, Drilling Contractor has produced no legally-sufficient evidence to establish that Lease Operator purposefully established minimum contacts with Texas. *See Burger King*, 471 U.S. at 474 (noting that "the constitutional touchstone remains whether the [nonresident] defendant purposefully established 'minimum contacts' in the forum State") (citing *International Shoe Co.*, 326 U.S. at 316); *see also Moki Mac*, 221 S.W.3d at 575–76. Because the jurisdictional evidence

---

*See* Tex. Bus. Orgs. Code Ann. § 10.254; *E-Quest Mgmt. v. Shaw*, 433 S.W.3d 18, 23–24 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("in Texas, there is no successor in interest when an acquiring corporation does not expressly agree to assume the liabilities of the other party to an agreement because 'successor' has a specialized meaning 'beyond simple acquisition'"). Although Drilling Contractor does not expressly assert the argument, there is no support in Texas law for the proposition that, like corporate liabilities, an entity's status as a successor would bind the successor to the jurisdictional contacts of its predecessor.

15

supports the trial court's conclusion it could not exercise personal jurisdiction over Lease Operator, the trial court did not err by granting Lease Operator's special appearance.

We overrule Drilling Contractor's second issue.

### III.  CONCLUSION

Having overruled Drilling Contractor's two issues, we affirm the judgment of the trial court as challenged on appeal.

/s/    Charles A. Spain
Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.